Argued and submitted January 12, 2016, affirmed April 26, petition for review allowed September 14, 2017 (361 Or 885)

ABDALLA DAHIR GUTALE,
*Petitioner-Appellant,*

*v.*

STATE OF OREGON,
*Defendant-Respondent.*

Washington County Circuit Court
C131617CV; A155474

395 P3d 942

Jason Weber argued the cause for appellant. With him on the brief was O'Connor Weber LLP.

Jonathan N. Schildt, Assistant Attorney General, argued the cause for respondent. On the brief were Ellen F. Rosenblum, Attorney General, Anna M. Joyce, Solicitor General, and Paul L. Smith, Deputy Solicitor General.

Before Duncan, Presiding Judge, and DeVore, Judge, and Flynn, Judge pro tempore.

**DUNCAN, P. J.**

More than two years after entry of his conviction for third-degree sexual abuse, petitioner filed a petition for post-conviction relief alleging that his attorney had been constitutionally inadequate in failing to advise him of the immigration consequences of his plea to that charge. *See Padilla v. Kentucky*, 559 US 356, 366-67, 369, 130 S Ct 1473, 176 L Ed 2d 284 (2010) (holding that counsel's failure to give correct advice regarding clear deportation consequences of a conviction amounted to ineffective assistance under the Sixth Amendment to the United States Constitution). The post-conviction court dismissed the petition as untimely, ruling that it did not fall within the "escape clause" of ORS 138.510. *See* ORS 138.510(3)(a) (requiring petitions for post-conviction relief to be filed within two years of the date of conviction unless the asserted grounds for relief "could not reasonably have been raised" in a timely manner).

On appeal, petitioner argues that the court's ruling regarding the escape clause was incorrect, because he could not reasonably have raised his claim of inadequate assistance until he learned, more than two years after his conviction, that he had pleaded guilty to a deportable offense. Petitioner concedes that, in *Benitez-Chacon v. State of Oregon*, 178 Or App 352, 355, 37 P3d 1035 (2001), *rev den*, 334 Or 76 (2002), we held that a petitioner is presumed to know immigration laws and, consequently, a petitioner's subjective lack of awareness of the legal consequences of a plea will not delay the time in which a petition must be filed under ORS 138.510(3). But, according to petitioner, his case is distinguishable from *Benitez-Chacon* on the facts, because petitioner received *no* advice regarding immigration consequences whereas the petitioner in *Benitez-Chacon* was told that she *might* be deported; alternatively, petitioner argues that we should overrule *Benitez-Chacon* because, among other things, it is absurd to presume that nonlawyers would understand an area of the law as nuanced and complex as immigration law. *See Padilla*, 559 US at 369 ("Immigration law can be complex, and it is a legal specialty of its own."); *Cervantes v. Perryman*, 954 F Supp 1257, 1260 (ND Ill 1997) (describing one provision of the Immigration and Nationality

Act as "an example of legislative draftsmanship that would cross the eyes of a Talmudic scholar").

We reject without extended discussion petitioner's attempt to factually distinguish *Benitez-Chacon*. There is no material difference, for purposes of *Benitez-Chacon*, between cases in which an attorney gives some immigration advice or none at all. 178 Or App at 356 (explaining that, in *Brown v. Baldwin*, 131 Or App 356, 361, 885 P2d 707 (1994), *rev den*, 320 Or 507 (1995), "we refused to distinguish between an attorney's passive failure to inform a defendant of particular legal information and an attorney's active misrepresentation concerning the law").

We also decline petitioner's invitation to overrule *Benitez-Chacon*. The principle on which *Benitez-Chacon* is predicated—that persons are assumed to know laws that are publicly available and relevant to them—can yield harsh consequences in cases such as this, essentially putting the burden on a petitioner to investigate the adequacy of counsel's performance. Nonetheless, we were not writing on a clean slate in *Benitez-Chacon*, nor do we do so now. *Benitez-Chacon* drew the applicable assumption from the Supreme Court's decision in *Bartz v. State of Oregon*, 314 Or 353, 356-60, 839 P2d 217 (1992), which interpreted ORS 138.510(2) (1991). That statute provided that a petition "must be filed within 120 days of the following, unless the court on hearing a subsequent petition finds grounds for relief asserted which *could not reasonably have been raised in the original or amended petition.*" (Emphasis altered.) Relying on legislative history from 1989, *Bartz* held that the legislature had intended the exception to late filing to be "construed narrowly." 314 Or at 359. Then, considering the petitioner's claim that trial counsel failed to advise him of a possible statutory defense before he pleaded guilty, the court explained:

> "Given the specific nature of Bartz's claim, the issue becomes whether the extant statutes pertaining to a particular criminal offense constitute information that is reasonably available to a defendant convicted of that offense. It is a basic assumption of the legal system that the ordinary means by which the legislature publishes and makes available its enactments are sufficient to inform persons of statutes that are relevant to them. *See Dungey v. Fairview*

*Farms, Inc.*, 205 Or 615, 621, 290 P2d 181 (1955) (every person is presumed to know the law). Accordingly, we hold that the relevant statutes were reasonably available to Bartz when his conviction became final. The failure of Bartz's counsel to advise him of all available statutory defenses thus is not a 'ground[] for relief * * * which could not reasonably have been raised' timely. ORS 138.510(2). The exception to the 120-day limitation period is not available to Bartz under the circumstances here."

314 Or 359-60. Thus, under *Bartz*, a post-conviction relief petitioner is presumed to have the knowledge that his or her trial counsel was appointed to provide.[1]

Recently, in *Verduzco v. State of Oregon*, 357 Or 553, 565, 355 P3d 902 (2015), the Supreme Court intimated that *Bartz* might not be the "final answer" on the meaning of ORS 138.510(3). In the course of discussing a similarly worded escape clause in ORS 138.550(3), the court in *Verduzco* noted that the legislature amended ORS 138.510 in 1993, after *Bartz* was decided; it further noted that, "[a]lthough the 1993 legislature left the wording of the escape clause unchanged, the legislature discussed the relationship between the escape clause and the expanded limitations period at some length in the course of enacting the 1993 amendments to the statute of limitations." 357 Or

---

[1] A criminal defendant has a constitutional right to counsel. US Const, Amend VI and XIV; Or Const, Art I, § 11. That right is predicated on the recognition that a criminal defendant is unlikely to have the skill and knowledge necessary to adequately protect his or her rights or interests. *Gideon v. Wainwright*, 372 US 335, 344, 83 S Ct 792, 9 L Ed 2d 799 (1963) ("[L]awyers in criminal courts are necessities, not luxuries."); *id.* (quoting *Powell v. Alabama*, 287 US 45, 68-69, 53 S Ct 55, 77 L Ed 158 (1932) ("The right to be heard would be, in many cases, of little avail if it did not comprehend the right to be heard by counsel. Even the intelligent and educated layman has small and sometimes no skill in the science of law. * * * He lacks both the skill and knowledge adequately to prepare his defense, even though he has a perfect one."). Criminal defendants rely on their trial counsel; indeed, with respect to certain decisions, they are required to do so. *See, e.g., State v. Dell*, 156 Or App 184, 187-88, 967 P2d 507, *rev den*, 328 Or 194 (1998) (a represented defendant does not have a right, under either the state or federal constitution, to serve as co-counsel); *State v. Becker*, 178 Or App 602, 607, 37 P3d 252, *rev den*, 334 Or 327 (2002) ("a defendant's counsel has full authority to manage the conduct of the trial" and, therefore, "generally may—without personal endorsement by the defendant on the record—waive rights falling within that province"). Yet, under *Bartz* and its progeny, at the post-conviction stage, petitioners cannot rely on the information and advice they received from their trial counsel; in effect, they are presumed to have the same (or better) knowledge of the law as the counsel that represented them at trial.

at 564 n 10. But, apart from noting that the court "cannot assume that *Bartz* provides the final answer on the meaning of ORS 138.510(3), as amended in 1993," 357 Or at 565, *Verduzco* provides no further guidance as to the meaning of that statute or the role that *Bartz* should play in construing it.

Despite the Supreme Court's observations regarding *Bartz*, we decline petitioner's invitation to overrule *Benitez-Chacon*. Petitioner has not directed us to any legislative history from 1993 that demonstrates an intention to legislatively overrule the holding in *Bartz*, or that convinces us that we were plainly wrong in *Benitez-Chacon* to rely on that prior construction of the escape clause. Thus, petitioner's challenge to the "narrow" construction of ORS 138.510(3) is properly directed to the Supreme Court. *See Chavez v. State of Oregon*, 283 Or App 788, 799, 391 P3d 801 (2017) ("[W]e are not in a position to overrule the Supreme Court, nor are we inclined to revisit our own well-considered opinion to the extent that it was based on those earlier Supreme Court cases.").

Accordingly, we adhere to *Benitez-Chacon* and affirm the post-conviction court's ruling that the grounds for relief asserted in the petition do not fall within the escape clause. The relevant immigration laws (and *Padilla*, which was decided before petitioner pleaded guilty) were publicly available to petitioner from the start of the limitations period, so his claim of inadequate assistance is not one "which could not reasonably have been raised" for purposes of ORS 138.510(3). *Accord Hardin v. Popoff*, 279 Or App 290, 303, 379 P3d 593, *rev den*, 360 Or 465 (2016) (citing *Bartz* and *Benitez-Chacon* and stating that the fact that "publicly available decisional law, much of which predates [the expiration of the two-year deadline] raises the same argument that petitioner raises in his post-conviction case, is a circumstance we consider in evaluating whether petitioner's failure to raise his claim in a timely fashion was reasonable").

Affirmed.