NELSON, J.
**504 A petition for post-conviction relief "must be filed within two years" of the conviction becoming final, unless the petition falls within the escape clause. ORS 138.510(3). A petition falls within the escape clause if the "grounds for relief asserted *** could not reasonably have been raised" within the limitation period. Id. This case concerns the meaning of the escape clause.
Here, petitioner alleged in a petition for post-conviction relief that his trial counsel had failed to inform him of the immigration consequences of his guilty plea to a class A misdemeanor and, through that omission, led petitioner to believe that there would be no immigration consequences. Based on that alleged failure, petitioner asserted that his trial counsel was constitutionally inadequate and ineffective under the state and federal constitutions. See *730 Padilla v. Kentucky , 559 U.S. 356, 369, 130 S.Ct. 1473, 176 L.Ed.2d 284 (2010) (requiring counsel to inform a criminal defendant of clear immigration consequences of a plea and, where consequences are not clear, to advise that plea may carry a risk of adverse immigration consequences).
The petition was filed outside the two-year limitations period. But petitioner alleged that his petition fell within the escape clause because he could not reasonably have known of his grounds for post-conviction relief within the limitations period. He based that allegation on the fact that neither trial counsel nor the sentencing court gave him any indication that his plea could carry immigration consequences, even when petitioner stated, on the record, that he was pleading guilty in part because he wished to travel and become a United States citizen. Petitioner alleged that he learned of counsel's inadequacy only when he was placed in deportation proceedings, after the statute of limitations had run.
The post-conviction court dismissed the petition as time-barred under ORS 138.510(3). The Court of Appeals affirmed, based on the principle that "persons are assumed to know laws that are publicly available and relevant to them," including relevant immigration law. Gutale v. State of Oregon , 285 Or. App. 39, 42, 395 P.3d 942 (2017) (citing **505 Bartzv. State of Oregon , 314 Or. 353, 839 P.2d 217 (1992) ; Benitez-Chacon v. State of Oregon , 178 Or. App. 352, 37 P.3d 1035 (2001) ). We allowed review to determine the proper meaning and scope of the escape clause. For the reasons set out below, we reverse the decisions of the post-conviction court and the Court of Appeals.
I. BACKGROUND
We take the historical facts from the allegations in petitioner's pleadings and attachments, including petitioner's response to the state's motion to dismiss. See Verduzco v. State of Oregon , 357 Or. 553, 555 n. 1, 355 P.3d 902 (2015) (taking undisputed facts from petitioner's pleadings and attachments). Petitioner is a refugee from Somalia who arrived in the United States in 2003, when he was in his early teens. In April 2010, at the age of 20, petitioner was charged with various crimes after he was discovered in a car having sex with a 16-year-old girl. Petitioner pleaded guilty to one count of sex abuse in the third degree, a class A misdemeanor, and the remaining charges were dismissed.
At the sentencing hearing that followed, petitioner stated that he was pleading guilty in part because he "really wan[ted to] travel" and to obtain his United States citizenship. The court sentenced petitioner to two years of probation and seven days in custody with credit for time served. The court ordered petitioner to register as a sex offender, but told him that if he successfully completed probation, it would "remove that requirement."
Petitioner's trial counsel was required under Padilla to provide petitioner with information regarding the potential immigration consequences of his plea. Padilla was decided by the United States Supreme Court a couple of months before petitioner's sentencing. And, under ORS 135.385(2)(d), trial courts are required to inform noncitizen defendants who plead guilty that "conviction of a crime may result *** in deportation, exclusion from admission to the United States or denial of naturalization." Despite petitioner's statement at sentencing that he was pleading guilty so that he could travel and become a United States citizen, neither trial counsel nor the court gave petitioner any indication that his plea subjected him to immigration **506 consequences. Petitioner's judgment of conviction was entered on June 3, 2010.
Just over two years later, on June 4, 2012, Immigration and Customs Enforcement (ICE) agents detained petitioner. In March 2013, petitioner filed for post-conviction relief, alleging that his trial counsel had been ineffective for failing to advise him of the immigration consequences of his plea. In an affidavit attached to his petition for post-conviction relief, he stated that his trial counsel had never discussed with him the immigration consequences of his guilty plea. At the time of his plea, petitioner was "unaware that [he] could be deported as a result of [his] sex abuse conviction." He remained "unaware that [he] could be deported until [he] was taken into ICE custody on June 4, 2012." He added, "I certainly would have filed within the two-year statute of limitations had I *731 been informed that I could be deported as a result of my sex abuse conviction."
The state moved to dismiss, arguing that the petition was barred by the two-year statute of limitations. Petitioner responded that he did not know that counsel had been ineffective until he was placed in deportation proceedings and learned, at that time, that he had pleaded to an offense that made him deportable. He further argued that, based on the actions of his counsel and the trial court, he had no reason to suspect either that he would suffer immigration consequences or that his counsel had failed to provide him with legally-required advice.
At a hearing on the state's motion to dismiss, the post-conviction court made clear its view that, if petitioner's allegations were true, then he would have a strong claim for ineffective assistance of counsel under Padilla . The court nevertheless granted the state's motion, concluding that the information underlying petitioner's claim "would have been available" to petitioner because Padilla "already had been decided."[1]
**507 Petitioner appealed. In considering petitioner's argument that he could not reasonably have known about his trial counsel's failings before being taken into ICE custody, the Court of Appeals relied on this court's decision in Bartz and the Court of Appeals' application of Bartz in Benitez-Chacon . In Bartz , the petitioner filed an untimely petition alleging that his trial counsel had been ineffective for "fail[ing] to advise him of an available statutory defense." 314 Or. at 357, 839 P.2d 217. The petitioner further alleged that, based on his trial counsel's failure, he could not reasonably have known of that defense within the limitations period. This court rejected that argument. The court held that, because "it is a basic assumption of the legal system that the ordinary means by which the legislature publishes and makes available its enactments are sufficient to inform persons of statutes that are relevant to them," the statutes pertaining to the petitioner's crime of conviction "were reasonably available to [the petitioner] when his conviction became final." Id . at 359-60, 839 P.2d 217 (citing Dungey v. Fairview Farms, Inc. , 205 Or. 615, 621, 290 P.2d 181 (1955) for proposition that "every person is presumed to know the law").
The petitioner in Benitez-Chacon filed an untimely petition alleging that her trial counsel had "failed to inform her fully and adequately of the immigration consequences of a no contest plea." 178 Or. App. at 354, 37 P.3d 1035. She alleged as well that, because her counsel had not fully informed her, she could not reasonably have known of the immigration consequences within the limitations period. The Court of Appeals relied on Bartz and rejected that argument. According to the Court of Appeals, "If the petitioner in Bartz was presumed to know the law based on the public nature of legislative enactments, so must petitioner in this case be presumed to have had knowledge of the relevant immigration statutes and rules." Id. at 357, 37 P.3d 1035.
In this case, petitioner is in essentially the same position as the petitioner in Benitez-Chacon , and he argued to the Court of Appeals that it should overrule its decision in that case. The court declined to so, concluding that the result in Benitez-Chacon was dictated by this court's decision Bartz . Gutale , 285 Or. App. at 44, 395 P.3d 942. The court held that **508 petitioner could not obtain relief from the statute of limitations because he was presumed to know the immigration law and United States Supreme Court case law that was relevant to his claim. Id. at 42-43, 395 P.3d 942. As a result, the Court of Appeals affirmed the post-conviction court's dismissal. Id. at 44, 395 P.3d 942 ("[W]e adhere to Benitez-Chacon and affirm the post-conviction court's ruling that the grounds for relief asserted in the petition do not fall within the escape clause."). Petitioner *732 then sought review in this court, which we allowed.
II. ANALYSIS
Under Oregon's Post-Conviction Hearing Act (PCHA), a petitioner who has been convicted of a crime may obtain collateral relief by establishing "[a] substantial denial in proceedings resulting in petitioner's conviction *** under the Constitution of the United States, or under the Constitution of the State of Oregon, or both, and which denial rendered the conviction void." ORS 138.530(1) (a). Post-conviction relief provides the primary mechanism by which a person who has been convicted of a crime may allege constitutional errors that were not, and could not have been, raised during the underlying criminal proceeding or on direct appeal. Those errors frequently involve allegations that counsel was unconstitutionally ineffective and inadequate in his or her handling of the criminal case.
The PCHA generally requires that a post-conviction petitioner file a petition within two years of the date that the conviction becomes final. ORS 138.510(3). That statute of limitations, however, is subject to an escape clause. Under the escape clause, a petitioner may file an untimely petition by asserting "grounds for relief *** which could not reasonably have been raised" within the two-year limitations period. Id.
The parties dispute the meaning of that text and how that text was applied in Bartz . Petitioner reads Bartz as establishing a factual presumption that people know the law. According to petitioner, even if such a presumption applies, it is a presumption that may be overcome by a petitioner who establishes facts demonstrating that, within the limitations period, he or she could not reasonably have known **509 the law that provided the basis for the claim. And petitioner maintains that whether a petitioner reasonably should have known the law that provides the basis for a claim turns on a fact-intensive consideration of the totality of circumstances, such as whether the petitioner had access to legal sources or whether the legal basis for the claim was complicated.
The state argues that petitioner's position is precluded by Bartz . According to the state, the standard is whether the bases for the claim-both the facts and the law-were reasonably available to the petitioner. And the state reads Bartz as holding that settled law is always reasonably available to a petitioner. Thus, under the state's reading, when the law that provides the basis for claim is settled, it is never a fact question whether that legal basis was reasonably available to a petitioner.
Neither party gets it exactly right. As we explain below, the state is correct that the appropriate standard focuses on whether the grounds for relief were known or reasonably available to a petitioner. However, we do not read Bartz as narrowing the escape clause as much as the state maintains. We instead conclude that, when a petitioner's claim is premised on a trial counsel's failure to advise on the immigration consequences of a conviction, fact questions may still be relevant to determining whether the petitioner should have known about those immigration consequences.
As an initial matter, we have made clear that a ground for relief reasonably could have been raised under one of two circumstances: (1) when the ground for relief was known or (2) when the ground for relief was reasonably available, despite not being known. See Verduzco , 357 Or. at 566, 355 P.3d 902 (providing textual analysis of the phrase "could not reasonably have raised"); id. at 573, 355 P.3d 902 (concluding that a ground for relief was reasonably available to the petitioner because he had previously asserted that same ground for relief). Thus, a ground for relief could not reasonably have been raised earlier if the ground for relief was not known and was not reasonably available. That is true for both the factual and legal basis for a ground of relief. See Eklof v. Steward , 360 Or. 717, 734, 385 P.3d 1074 (2016) (considering whether the factual predicate of a petitioner's claim "reasonably should **510 have [been] discovered"); Verduzco , 357 Or. at 571, 355 P.3d 902 (considering whether a legal claim could have been reasonably anticipated even before the legal basis for that claim was settled by the courts). *733 Within that framework-which turns on whether the ground for relief was known or reasonably available-petitioner understands Bartz as addressing whether the ground for relief was known. Petitioner reads Bartz as holding that the petitioner was presumed to know the legal basis for his claim because people are presumed to know the law. To be sure, in a parenthetical citation, the court in Bartz cited Dungey for the proposition that "every person is presumed to know the law." Bartz , 314 Or. at 360, 839 P.2d 217. And, in Benitez-Chacon , the Court of Appeals applied Bartz as presuming that people know the law: "If the petitioner in Bartz was presumed to know the law based on the public nature of legislative enactments, so must petitioner in this case be presumed to have had knowledge of the relevant immigration statutes and rules." Benitez-Chacon , 178 Or. App. at 357, 37 P.3d 1035.
But, notwithstanding the citation to Dungey , this court's analysis in Bartz did not turn on a presumption that people know the law. Instead of presuming that the petitioner knew the law, the court in Bartz concluded that the legal basis for the petitioner's claim was reasonably available to the petitioner. The court reached that conclusion because, if the petitioner had looked, the law could have been found in publicly available sources. As noted above, the court held that, because "it is a basic assumption of the legal system that the ordinary means by which the legislature publishes and makes available its enactments are sufficient to inform persons of statutes that are relevant to them," the statutes pertaining to the petitioner's crime of conviction "were reasonably available to [the petitioner] when his conviction became final." 314 Or. at 359-60, 839 P.2d 217 (emphasis added). Thus, consistent with our other decisions interpreting the escape clause, the court's analysis in Bartz turned on whether the legal basis for the petitioner's claim was reasonably available to him. And the court concluded that it was.
Nevertheless, Bartz does not control the outcome of this case in the manner that the state maintains. Being **511 reasonably available means more than just that a petitioner could have found the law if he or she had looked. Instead, a ground for relief is reasonably available only if there was a reason for the petitioner to look for it.
For example, in cases where petitioners have asserted grounds for relief based on newly discovered facts, this court has considered whether "the facts on which their new grounds for relief depended could not reasonably have been discovered sooner." Verduzco , 357 Or. at 566, 355 P.3d 902. In one such case, Eklof , the petitioner brought an untimely and successive petition for post-conviction relief, alleging that the prosecutor had withheld favorable evidence during the underlying criminal proceedings and that the fact of that withholding came to light only after the petitioner's first petition. 360 Or. at 719, 385 P.3d 1074. Specifically, after the first petition, the petitioner obtained the case file from her accomplice's trial counsel containing evidence that could have been used to impeach a witness that the state presented against the petitioner in her criminal trial. The petitioner alleged that the state violated her constitutional rights when it failed to turn over that impeachment evidence before the criminal trial. Id. at 722, 385 P.3d 1074.
The state argued in Eklof that, as a matter of law, the petitioner could not take advantage of the escape clause for either untimely or successive petitions because the petitioner's first post-conviction counsel had failed to request and review the case file at issue.[2] This court rejected that argument and held that whether the petitioner's first postconviction counsel should have requested and reviewed the case file turned on whether there was information providing a reason to request and review the case file. See 360 Or. at 734, 385 P.3d 1074 ("Did petitioner's first post-conviction counsel have any information that would have revealed that the state had the evidence at issue during petitioner's criminal prosecution?"); id. at 733, 385 P.3d 1074 (stating that the question of "[w]hether a petitioner 'reasonably could have been expected' to raise her claim in a timely initial post-conviction action often will depend on *734 **512 who knew what, and when"). Thus, the petitioner's ground for relief was not barred because, although the evidence may have been available to her counsel on request, her counsel may have had no reason to suspect that the state had possession of evidence that it failed to produce.
The resulting standard, therefore, requires assessing both whether the petitioner reasonably could have accessed the ground for relief and whether a reasonable person in the petitioner's situation would have thought to investigate the existence of that ground for relief. That standard is very similar to the standard for a discovery rule, which is used in other contexts. In negligence cases, for example, the statute of limitations does not begin until at least "the earlier of two possible events: (1) the date of the plaintiff's actual discovery of injury; or (2) the date when a person exercising reasonable care should have discovered the injury, including learning facts that an inquiry would have disclosed." Greene v. Legacy Emanuel Hospital , 335 Or. 115, 123, 60 P.3d 535 (2002) (emphasis in original); see also Johnson v. Mult. Co. Dept. Justice , 344 Or. 111, 119, 178 P.3d 210 (2008) ("[T]he discovery rule does not protect plaintiffs who fail to make a further inquiry when a reasonable person would do so.").
What distinguishes the petitioner in Bartz and petitioner in this case is whether they had a reason to look for the existence of legal grounds for relief. For the petitioner in Bartz , the conviction itself put him on notice of the need to investigate the existence of a ground for relief. He was, of course, aware of that conviction at the time it occurred. It was, therefore, incumbent on the petitioner to look for legal challenges to his conviction. And the court concluded in Bartz that, given the public nature of legislative enactments, the legal grounds for the petitioner's challenge would have been accessible to a reasonable person looking for such a legal challenge.
For petitioner in this case, however, his conviction may not have put him on notice of the need to investigate. Instead, petitioner alleges that it was the consequences of that conviction that caused him to conduct such an investigation. And those consequences are not always obvious, even to lawyers. See Padilla , 559 U.S. at 369, 130 S.Ct. 1473 ("There will, therefore, **513 undoubtedly be numerous situations in which the deportation consequences of a particular plea are unclear or uncertain."). Petitioner alleges that, until he was detained by ICE after the limitations period had run, he was unaware that his counsel had caused him harm that might arise in the future. In support, petitioner alleges that, at his sentencing hearing, neither his trial counsel nor the trial court raised the possibility of immigration consequences even when petitioner stated that he was pleading guilty so that he could travel and become a citizen of the United States. Based on those allegations, petitioner's claim is akin to a latent physical injury in a negligence case. He might have found the ineffective assistance of his counsel if he had looked for it, but he had no reason to look for it before being detained by ICE.
Our prior decisions interpret the escape clause in ORS 138.510(3) in a manner consistent with that understanding. As noted, the text at issue is the phrase "could not reasonably have raised." ORS 138.510(3). We observed in Verduzco that the legislature's use of the adverb "reasonably" to modify the phrase "could not have raised" requires an inquiry beyond what is merely possible, calling instead "for a judgment about what is 'reasonable' under the circumstances." 357 Or. at 566, 355 P.3d 902.
When it was enacted in 1989, ORS 138.510(3) originally required a post-conviction petitioner to file within 120 days of the conviction becoming final.[3] The legislature's primary purpose for the statute of limitations was to reduce the costs of indigent defense by limiting frivolous post-conviction claims. See Bartz , 314 Or. at 358, 839 P.2d 217 (1989 amendments to PCHA were intended to reduce *735 indigent defense costs); Tape Recording, House Judiciary Crime and Corrections Subcommittee, HB 2796, Mar. 9, 1989, Tape 44, Side A (statement of Representative Baum). The escape clause creates an exception to the bar imposed by that statute of limitations. According to the court in Bartz , the purpose of the escape clause was "to give persons extra time to file petitions for post-conviction relief in extraordinary circumstances." 314 Or. at 358, 839 P.2d 217. And, as a result, the court **514 said that the escape clause should be "construed narrowly." Id. at 359, 839 P.2d 217. The court did not, however, attempt to identify the boundaries of what counts as extraordinary or to define just how narrowly to construe the escape clause.
We understand the court in Bartz to have been appropriately concerned with reading the escape clause in a manner that would not allow the exception to swallow the rule. The facts presented by the petitioner in Bartz were unexceptional. It is not unusual for a petitioner to be unaware of the law pertaining to the crime of conviction. If that fact, without further qualification, were sufficient to bring a claim within the escape clause, then it is likely that most claims-and certainly most claims for ineffective assistance of counsel-would fall within the escape clause. That result would defeat the goal that the legislature was attempting to advance by passing the statute of limitations in the first place.
This case does not present those same concerns. Whereas the petitioner in Bartz was aware of his conviction and could have either researched whether his trial counsel was ineffective, or sought help from an attorney to make that determination, petitioner in this case did not know about the immigration consequences that form the basis for his claim until he was later detained by ICE. Further, petitioners who were unaware of the immigration consequences of their convictions are a narrow class of petitioners. Allowing petitioner's claim in this case to fall within the escape clause does not run the risk of having the escape clause swallow the statute of limitations.
The court in Bartz additionally reviewed specific types of claims discussed during the legislative hearings that led to the statute of limitations and escape clause of ORS 138.510(3). The court understood those discussions as identifying representative examples of claims that might fall within the escape clause. The state points out that claims based on a trial counsel's failure to advise on the immigration consequences of conviction is not among those claims identified during those hearings:
"Discussion of the scope of the 'escape clause' took place in two subcommittees of the House Committee on the **515 Judiciary. In the Subcommittee on Crime and Corrections, a representative of the Justice Department noted the importance of such a provision in cases where evidence is newly discovered after the expiration of the limitation period. A representative of the Oregon Criminal Defense Lawyers Association testified to the Subcommittee on Civil and Judicial Administration that he would support the 120-day time limitation if an exception were made where 'extraordinary circumstances' were shown. As examples, he mentioned convictions procured by collusion between a prosecutor and a defense lawyer, but coming to light after the limitation period, and situations in which the statute under which the conviction was obtained is later declared facially unconstitutional."
Id. at 359, 839 P.2d 217 (internal footnotes and citations omitted).
We do not interpret that legislative history as defining the scope of the escape clause. As an initial matter, the Justice Department representative that the court referred to was not discussing how the text of the escape clause would be applied. Instead, she was discussing the original version of the proposed statute of limitations, which contained no escape clause at all. She acknowledged that, under that original version, a petitioner who discovered evidence of a claim after the limitations period would be unable to bring a state claim for post-conviction relief. She proposed addressing that issue, not by adding an escape clause, but by extending the statute of limitations from the 120 days being proposed *736 to 180 days or one year. Minutes, Subcommittee on Crime and Corrections, Mar. 9, 1989, Ex D (statement of Assistant Attorney General Brenda Peterson). As a result, testimony by that witness says little about the scope of the escape clause that the legislature later enacted.
And, similarly, the testimony from the representative of the Oregon Criminal Defense Lawyers Association makes no attempt to define the scope of the escape clause that the legislature enacted. That witness was discussing a proposed escape clause that would have required a petitioner to establish "manifest injustice." Tape Recording, Senate Judiciary Committee, SB 284, Apr. 12, 1989, Tape 123, Side A (statement of Ross Shepard). That is, however, not the standard that the legislature ultimately passed. Instead of **516 requiring a petitioner to establish "manifest injustice," the escape clause passed by the legislature applies if the petitioner establishes that his or her claim "could not reasonably have been raised" within the limitation period. Because the legislature did not adopt the standard discussed by that witness, we do not understand that witness as discussing representative cases that would fall under separate standard that the legislature did adopt.
Additional analysis of the legislative history tells us little about the intended scope of the escape clause. During the 1989 legislative session, the legislature heard testimony that most petitions, and in particular "most stronger cases," would be filed within the statute of limitations, and that the effect of the statute of limitations would be to "take[ ] away the opportunity for defendants with a little time on their hands to file in periods of time that are quite extended from when they were convicted." Tape Recording, Senate Judiciary Committee, SB 284, June 12, 1989, Tape 121, Side B (statement of Bill Linden).
By adding the escape clause to the statute of limitations, the legislature expressed an intent that some untimely claims for post-conviction relief would be permitted, notwithstanding the statute of limitations. The escape clause in ORS 138.510(3) is closely related to a parallel provision in ORS 138.550(3), which prohibits a petitioner who already has filed a post-conviction petition from later filing a successive petition. Under ORS 138.550(3),
"all grounds [for relief] must be asserted in [the] original or amended petition, and any grounds not so asserted are deemed waived unless the court on hearing a subsequent petition finds grounds for relief asserted therein which could not reasonably have been raised in the original or amended petition."
(Emphasis added.) That provision codifies claim preclusion principles: It addresses the question of whether a petitioner who already has litigated a petition for post-conviction relief may return to court and litigate a second time, and it provides that a petitioner may not do so where counsel raised, or reasonably could have raised, the grounds at issue in that prior litigation. See Verduzco , 357 Or. at 565, 355 P.3d 902 (citing **517 Johnson v. Premo , 355 Or. 866, 874-75, 333 P.3d 288 (2014) for proposition that ORS 138.550(3) codifies claim preclusion principles).
The 1989 legislative history makes clear, and our case law also has recognized, that the text of the escape clause contained in ORS 138.510(3) is derived from its ORS 138.550(3) counterpart. State Court Administrator Bill Linden recommended the addition of the escape clause to the proposed 120-day statute of limitations to clarify "how [the statute barring successive petitions] might come into play both when a [petition for post-conviction relief] is timely filed within 120 days and when it is not." He wrote: "Our suggestion is that an amendment may be necessary to the current bill to allow the issues brought up on [postconviction relief] past 120 days if they could not reasonably have been raised before that time." Linden warned that, "without such an amendment, there is a greater chance of litigation[.]" Exhibit G, House Judiciary Crime and Corrections Subcommittee, HB 2796, Mar. 9, 1989 (accompanying statement of Bill Linden).[4]
*737 We take Linden's concern to be that a 120-day statute of limitations without exception could give rise to litigation concerning the relationship between ORS 138.510(3) and ORS 138.550(3), where a successive petition alleging a ground that could not reasonably have been raised would be permitted under ORS 138.550(3), but barred under the statute of limitations. The 1989 Legislative Assembly adopted the text proposed by Linden and enacted it into law without **518 modification. It thus appears that the 1989 Legislative Assembly intended the escape clause to provide consistency in the treatment of successive petitions that are timely and untimely: If a successive petition is permitted under ORS 138.550(3) because it raises a ground for relief that could not reasonably have been raised, then generally it also is permitted under ORS 138.510(3), even if it is filed outside the 120-day limitations period.
Although that legislative history suggests that timely and untimely successive petitions will frequently be treated the same, it does not directly address what to do with petitions that are untimely but not successive. The escape clause to the statute of limitations differs from the escape clause to the bar on successive petitions in one important respect. In Verduzco , Eklof , and our other cases applying the escape clause to the bar on successive petitions, we have considered whether a ground for relief reasonably could have been raised from the point of view of counsel. See Eklof , 360 Or. at 733, 385 P.3d 1074 ("[A] common issue in successive post-conviction actions is whether counsel in an earlier post-conviction action reasonably could have been expected to raise a claim that later appellate case law demonstrated would have been viable." (Emphasis added.)). As noted, ORS 138.550(3) codifies claim preclusion principles: It addresses the question of whether a petitioner who already has litigated a petition for post-conviction relief may return to court and litigate a second time, and it provides that a petitioner may not do so where counsel reasonably could have raised the grounds at issue in that prior litigation.[5] By contrast, when the bar **519 on successive petitions does not apply, the inquiry under the escape clause to the statute of limitations is whether a petitioner reasonably could have raised a ground for relief before any litigation has occurred . The focus of the reasonableness inquiry is therefore the petitioner, *738 rather than an attorney representing the petitioner.[6] See Bartz , 314 Or. at 360, 839 P.2d 217 (inquiry was whether the petitioner himself reasonably could have known of the statutes pertaining to his offense of conviction).
Our conclusion that the subject of the reasonableness inquiry in ORS 138.510(3) is an unrepresented petitioner, rather than counsel, is significant. Although counsel may be responsible for knowing that there may be immigration consequences to a criminal conviction, we do not presume that to be the case for an individual petitioner, unless there is a factual basis for concluding that the petitioner knew that there may be immigration consequences to his or her conviction.
**520 There was no such factual basis alleged in this case. Here, petitioner alleged that, at sentencing, he stated that he was pleading guilty so that he could still travel and become an United States citizen. Neither his trial counsel nor the sentencing court informed him that his conviction might affect his ability to travel or become a citizen. He alleged that, as a result, he did not know that his conviction could affect his immigration status and that he remained unaware of that fact until he was detained by ICE after the limitations period expired. It may be that the factual record will ultimately reveal that petitioner had information about the immigration consequences of his conviction sooner. But, because we credit petitioner's allegations in reviewing the post-conviction court's ruling on a motion to dismiss, we conclude that the post-conviction erred in granting the state's motion to dismiss.
The decision of the Court of Appeals is reversed. The judgment of the circuit court is reversed, and the case is remanded to the circuit court for further proceedings.
Balmer, J., dissented and filed an opinion, in which Kistler, S.J., joined.

The post-conviction court also "assume[d] there was certain information" about the immigration consequences of criminal convictions that would have been available to petitioner when he received his green card. Regardless of whether that assumption was correct, there was nothing in the pleadings and record before the post-conviction court on that issue. And, on review in this court, the state does not argue the post-conviction court's judgment should be affirmed on that ground.

Like untimely petitions, successive petitions are barred unless they assert grounds for relief that "could not reasonably have been raised" in the original petition. ORS 138.550(3).

In 1993, the legislature expanded the time for filing a post-conviction petition from 120 days to two years. Or. Laws 1993, ch. 517, § 1.

Linden's full statement concerning the escape clause language is as follows:
"ORS 138.550, which is not amended by this bill, allows that PCR grounds for relief that were not raised in the original or amended petition 'are deemed waived unless the court on hearing a subsequent petition finds grounds for relief asserted which could not reasonably have been raised in the original or amended petition .' (Emphasis added). The question we have is how this statute might come into play both when a PCR is timely filed within 120 days and when it is not. Our suggestion is that an amendment may be necessary to the current bill to allow the issues brought up on a PCR past 120 days if they could not reasonably have been raised before that time. On the other hand, everyone who misses the 120 days SOL may raise the issue that their issues could not have reasonably been raised earlier and the court would have to review that issue. Without such an amendment, however, there is a greater chance of litigation as long as postconviction relief is available in some form."
Id. (emphasis in original).

In Bogle v. State , 363 Or. 455, 423 P.3d 715 (2018), we noted that, when the legislature enacted the Post-Conviction Hearing Act in 1959, it intended that claim preclusion provisions would apply when a post-conviction petitioner was represented by counsel. The legislature did that by providing indigent petitioners with counsel. ORS 138.590(4) ; see Bogle , 363 Or. at 466-67, 423 P.3d 715 (noting that one intended purpose of court-appointed counsel was to "ensure that [a] petitioner did not inadvertently waive any grounds for relief" in view of strict res judicata provisions; those provisions "apply 'only to the effect of prior post-convictions proceedings under the act, when appointed counsel will always have been available in the first proceeding' ") (quoting Jack G. Collins and Carl R. Neil, The Oregon Postconviction Hearing Act , 39 Or. L. Rev. 337, 358 (1960) (emphasis omitted)).
Additionally, the legislature determined that the ban on successive claims should apply differently depending on whether the petitioner was represented by counsel on direct appeal. See ORS 138.550(2) ("If petitioner was not represented by counsel in the direct appellate review proceeding, due to lack of funds to retain such counsel and the failure of the court to appoint counsel for that proceeding, any ground for relief under ORS 138.510 to 138.680 which was not specifically decided by the appellate court may be asserted in the first petition for relief under ORS 138.510 to 138.680, unless otherwise provided in this section."). The reason for that distinction was because "a layman cannot fairly be held responsible for failure to proceed and raise legal issues when he is without legal assistance." Collins and Neil, The Oregon Postconviction Hearing Act , 39 Or. L. Rev. at 357.

The state argues that, because the escape clause asks whether the "grounds for relief" in an untimely petition "could *** reasonably have been raised," it intended the reasonableness inquiry to focus exclusively on the grounds, rather than on whether it would have been reasonable for a petitioner to raise those grounds. As we explained in Alfieri v. Solomon , 358 Or. 383, 399, 365 P.3d 99 (2015), although the legislature often uses the passive voice, "its significance for statutory interpretation varies." In some instances, it may convey intent that a statute applies broadly; at other times it "adds nothing to the meaning of a provision and instead generates ambiguity as to how the law should be applied." Id . at 399-400, 365 P.3d 99. The passive voice does not, as the state suggests, necessarily render the actor inconsequential to our analysis. Here, the plain text of ORS 138.510(3) asks whether the "grounds for relief asserted *** could *** reasonably have been raised." The question is not whether the grounds are reasonable, but rather, whether an unspecified actor reasonably could have raised them. Although the legislature used the passive voice, it is difficult to consider the reasonableness inquiry in ORS 138.510(3) from the point of view of the "grounds" alone; "reasonably" modifies the verb "raised," and grounds do not raise themselves. Turning to the context of ORS 138.510(3), we conclude that it is the petitioner who reasonably must have raised the grounds. The statutes governing post-conviction relief refer to the person who files a petition as the "petitioner." See ORS 138.530(1) (stating grounds for relief that the petitioner must establish).