NELSON, J.
*747 **491 Under the Post-Conviction Hearing Act (PCHA), a petition for post-conviction relief must generally be filed within two years of a criminal defendant's conviction becoming final. ORS 138.510(3). That statute of limitations, however, is subject to an escape clause, allowing an untimely petition if the post-conviction court "finds grounds for relief asserted which could not reasonably have been raised" within the limitations period. Id.
We allowed review of two cases-this case, and Gutale v. State of Oregon , 285 Or. App. 39, 395 P.3d 942 (2017) -that require us to interpret the meaning and scope of that escape clause. In both cases, petitioners alleged that their trial counsels were constitutionally ineffective and inadequate under the state and federal constitutions, based on the failure of those attorneys to provide petitioners with information regarding the immigration consequences of their guilty pleas. See Padilla v. Kentucky , 559 U.S. 356, 369, 130 S.Ct. 1473, 176 L.Ed.2d 284 (2010) (requiring counsel to inform a criminal defendant of clear immigration consequences of a plea and, where consequences are not clear, to advise that plea may carry a risk of adverse immigration consequences). And petitioners in both cases alleged that their claims fell within the escape clause because they learned of their counsel's inadequacy only when they were put in deportation proceedings after the statute of limitations had run. Both petitioners argued that they should not have been presumed to know the law any sooner than that.
But there are some differences between the cases. In this case, but not in Gutale , petitioner was told at the time of his plea that there might be immigration consequences to his conviction, even though he was not told that there certainly would be immigration consequences. Compare Gutale v. State of Oregon , 364 Or. 502, 519, 435 P.3d 728 (2019). Additionally, in this case, but not in Gutale , petitioner alleged that his mental illness and intellectual disability prevented him from knowing that he had a claim for post-conviction relief within the two-year limitations period.
The state moved to dismiss, arguing that petitioner could not obtain relief under the escape clause because the **492 laws underlying petitioner's claim were reasonably available to him. The post-conviction court dismissed the petition as time-barred under ORS 138.510(3). The Court of Appeals affirmed without opinion. Perez-Rodriguez v. State of Oregon , 284 Or. App. 890, 393 P.3d 1209 (2017). For the reasons stated below, we affirm the decision of the Court of Appeals and the judgment of the post-conviction court.
We take the historical facts from the allegations in petitioner's pleadings and attachments. See Verduzco v. State of Oregon , 357 Or. 553, 555 n. 1, 355 P.3d 902 (2015) (taking undisputed facts from petitioner's pleadings and attachments). Petitioner is a lawful permanent resident who immigrated to the United States from Argentina in 1977, when he was about six years old. On August 27, 2011, petitioner went to the Emergency Department at Saint Vincent's Hospital in Washington County. He began acting erratically in the waiting room, and ultimately attacked and injured a security guard who was attempting to assist him. When law enforcement arrived and read petitioner his Miranda rights, petitioner said, "I didn't do anything wrong," and, "I hear voices and I wish I wouldn't listen to them."
On January 6, 2012, petitioner pleaded guilty to attempted assault in the second degree, a class C felony. ORS 161.405(2)(C). His plea petition provided:
"12. In addition to the sentence imposed, I understand that there may be other significant consequences if I enter a 'Guilty' or 'No Contest' plea, including, but not limited to:
"If I am not a United States citizen, deportation/removal, exclusion from future entry into the United States, or denial of naturalization[.]"
An attorney certification on the plea petition stated: "I have explained to my client the maximum penalty and other consequences of entering a guilty or no contest plea, including possible immigration consequences."
At petitioner's sentencing hearing, defense counsel explained to the court that petitioner *748 "unfortunately has had a long history of suffering from significant mental health problems and on this date was not on his normal, **493 prescribed medication." The trial court ordered a mental health evaluation as a condition of post-prison supervision and strongly encouraged petitioner to stay on his psychiatric medications in the future. The court did not inform petitioner that his conviction could result in potential immigration consequences, as is required under ORS 135.385(2)(d) (requiring court to inform noncitizen defendants who plead guilty that "conviction of a crime may result *** in deportation, exclusion from admission to the United States or denial of naturalization"). Petitioner received a sentence of 36 months in prison, three years of post-prison supervision, and fees. That criminal proceeding was final when the trial court entered the judgment on February 16, 2012.
More than two years later, in June 2014, petitioner received a Notice to Appear from Immigration and Customs Enforcement (ICE). The notice charged petitioner with deportability based on his 2012 conviction for attempted assault, which, according to ICE, constituted an "aggravated felony" conviction under 8 USC § 1227(a)(2)(A)(iii). On August 26, 2014, petitioner was detained by the Department of Homeland Security for purposes of deportation.
Petitioner filed for post-conviction relief in June 2015, approximately 16 months following the expiration of the two-year limitations. In an attached declaration, petitioner stated: "I was not advised [that] there was an immigration hold on me until I was approximately six months from release from prison." Petitioner stated that the only advice that his criminal defense attorney had provided regarding the immigration consequences of his plea was that he should "keep [his] fingers crossed." According to petitioner, he would not have pleaded guilty to attempted assault in the second degree had he known that the resulting conviction would require his deportation from the United States.
Based on those facts, petitioner alleged that his trial counsel had been ineffective and inadequate, in violation of Article I, Section 11, of the Oregon Constitution, and the Sixth and Fourteenth Amendments to the United States Constitution. In Padilla , the United States Supreme Court held that counsel is constitutionally required to advise a criminal defendant of the clear immigration consequences **494 of a plea. 559 U.S. at 369, 130 S.Ct. 1473 ("[W]hen the deportation consequence is truly clear, as it was in this case, the duty to give correct advice is equally clear."). But when the immigration consequence of a plea is not clear, then counsel does not need to do "more than advise a noncitizen client that pending criminal charges may carry a risk of adverse immigration consequences." Id.
Petitioner alleges that the immigration consequences should have been clear to his trial counsel but that his counsel failed to meet the constitutional requirement, either by giving him "affirmative misadvice," or by failing to inform him that his plea would "require his deportation from the United States."[1] In support of his allegations, petitioner submitted a declaration from his immigration attorney, which stated that petitioner's conviction rendered him automatically removable from the United States and ineligible for almost all forms of relief.
Petitioner acknowledged that his petition for post-conviction relief was untimely. He alleged, however, that his claim fell within the escape clause of ORS 138.510(3) because his mental health conditions interfered with his ability to understand that he had a post-conviction claim. Specifically, petitioner attached a declaration from a clinical social worker, who stated that petitioner has schizoaffective disorder, which may include "hallucinations, paranoia, delusions, and disorganized speech and thinking." The clinical social worker also stated that petitioner has borderline intellectual functioning, which is defined as having a "below average cognitive ability (generally an IQ of 70-85)." Petitioner alleged that those disabilities affected his ability to understand his circumstances:
*749 "Due to his mental health conditions, Petitioner has a limited ability to understand. He is not able to function independently. His psychological impairments prevent him from understanding case law. His mental health conditions prevent him from understanding his conviction. He was not **495 able to know that his lawyer was ineffective in handling his case."
In its motion to dismiss, the state relied on Bartz v. State of Oregon , 314 Or. 353, 839 P.2d 217 (1992), and the Court of Appeals' application of Bartz in Benitez-Chacon v. State of Oregon , 178 Or. App. 352, 37 P.3d 1035 (2001), for the principle that a petitioner for post-conviction relief is presumed to have knowledge of the law that is relevant to her claim, including immigration statutes and rules. The post-conviction court granted the state's motion, on the basis that "petitioner has failed to establish good cause for filing the Petition for Post-Conviction Relief outside of the statute of limitations as prescribed in ORS 138.510(3)." The Court of Appeals affirmed without opinion. Perez-Rodriguez , 284 Or. App. at 890, 393 P.3d 1209.
As noted, our decision in Gutale also raised the issue of whether a petitioner alleging that counsel was constitutionally ineffective and ineffectual for failing to advise him of immigration consequences was barred from relief under the same escape clause. Gutale , 364 Or. at 524-25, 435 P.3d 728. Petitioner's briefing in this case largely tracks the petitioner's briefing in Gutale . Both read Bartz as establishing a factual presumption that people know the law, a presumption that may be overcome when a petitioner establishes facts demonstrating that he or she could not reasonably have known the law that provided the basis for the claim within the limitations period. And both argue for a fact-intensive standard based on a totality of circumstances.
The state contends that the arguments presented in both this case and Gutale are controlled by this court's decision in Bartz , which stated that it is "a basic assumption of the legal system that the ordinary means by which the legislature publishes and makes available its enactments are sufficient to inform persons of statutes that are relevant to them." 314 Or. at 359-60, 839 P.2d 217. The state reads Bartz as establishing a standard of reasonable availability and holding that settled law is always reasonably available to a petitioner. Thus, under the state's reading, when the law that provided the basis for claim is settled, it is never a fact **496 question whether that legal basis was reasonably available to a petitioner.
In Gutale , we concluded that both parties' arguments were too broad. We rejected the petitioner's argument that Bartz establishes a rebuttable factual presumption that people know the law. Instead, we agreed with the state that the appropriate standard focuses on whether the grounds for relief were known or reasonably available to a petitioner. And we interpreted Bartz as holding that the public nature of the law made the legal basis for the petitioner's claim in Bartz reasonably available to him. Gutale , 364 Or. at 510-11, 435 P.3d 728.
But we rejected the state's argument that the same analysis from Bartz applied to the petitioner in Gutale . Instead, we held that, for grounds for relief to be reasonably available, means more than just that a petitioner reasonably could have found the law if he or she had looked. Instead, a ground for relief is reasonably available only if there was a reason to investigate the existence of that ground for relief. Gutale , 364 Or. at 511-12, 435 P.3d 728. For the petitioner in Bartz , the conviction itself put him on notice of the need to investigate the existence of a ground for relief pertaining to the crime of conviction, and he was, of course, aware of his conviction at the time it occurred. For the petitioner in Gutale , however, his conviction may not have put him on notice of the need to investigate. He alleged that neither his counsel nor the court informed him that there might be any immigration consequences as a result of his plea. Instead, that petitioner alleged that he learned of the potential immigration consequences of that conviction at the time that he was detained by ICE and, because of that detention, he conducted such an investigation. And he had no reason to look for the legal grounds of his claim before he learned about those immigration consequences when he was detained by ICE. We held that, although *750 the petitioner in Gutale might have found that ground for relief if he had looked for it, he had no reason to look for it before being detained by ICE. Gutale , 364 Or. at 513, 435 P.3d 728.
As noted above, this case is distinguishable from Gutale on two grounds, both of which are relevant to our analysis. First, under the facts alleged in Gutale , the petitioner was led to believe that his conviction could have **497 no effect on his immigration status. And he believed that until he was detained by ICE. Here, however, petitioner was informed in his plea petition that his conviction could result in "deportation/removal, exclusion from future entry into the United States, or denial of naturalization[.]" And his trial counsel stated that he had explained to petitioner that the conviction had "possible immigration consequences."
Petitioner does not dispute that reading of his allegations. He argues instead that those allegations support his claim for post-conviction relief. According to petitioner, he should have been told not that his conviction could have immigration consequences. Rather, he contends that he should have been told that his conviction would certainly have immigration consequences because those consequences should have been clear to his trial counsel.
But the question here is not whether those allegations, if true, would establish grounds for post-conviction relief. The question is whether those allegations establish that petitioner's claim falls within the escape clause-namely, whether his grounds for post-conviction relief "could not reasonably have been raised" within the two-year limitations period following the date on which his conviction became final. Unlike the petitioner in Gutale , petitioner in this case alleges facts putting him on notice of potential immigration consequences for his criminal conviction. He was, therefore, in the same position as the petitioner in Bartz . As a result, because petitioner was told about the risk of immigration consequences at the time of his conviction, it was incumbent on him to determine what those immigration consequences might be and whether his trial counsel had failed to accurately communicate those consequences to him.
There is another fact, however, that makes this case distinguishable from Gutale and additionally distinguishable from Bartz . Unlike those petitioners, petitioner here alleges that he suffers from a mental illness and intellectual disability. He argues that those conditions prevented him from reasonably bringing his claim during the two-year limitations period. That argument raises two questions:
**498 (1) whether a petitioner's mental illness and intellectual disability may ever justify applying the escape clause and (2) if so, whether the particular mental illness and intellectual disability that petitioner alleges are sufficient allegations to establish, for assessing the state's motion to dismiss, that petitioner could not reasonably have brought his claim during the limitations period.
We are hesitant to definitively resolve the first question. The parties' arguments on that question are significantly underdeveloped. As noted above, petitioner's briefing in this case largely repeats the arguments presented in Gutale , even though these cases are factually distinct. Moreover, the question is not an easy one. The escape clause uses a reasonableness standard. See ORS 138.510(3) (turning on whether the "grounds for relief asserted *** could not reasonably have been raised" within the limitations period) (emphasis added). Frequently, reasonableness standards do not consider an actor's mental illness or intellectual capacity. See, e.g. , Restatement (Third) of Torts: Phys. & Emot. Harm § 3 (2010) ("A person acts negligently if the person does not exercise reasonable care under all the circumstances."); id. § 11 (c) ("An actor's mental or emotional disability is not considered in determining whether conduct is negligent, unless the actor is a child."). At least part of the reason for not considering an actor's mental illness or intellectual capacity is "because of the problems of administrability that would be encountered in attempting to identify them and assess their significance." Id. § 11 comment e.
Similarly, many statutes of limitations are subject to a discovery rule that applies a reasonableness standard. See *751 Greene v. Legacy Emanuel Hospital , 335 Or. 115, 123, 60 P.3d 535 (2002) (stating that the statute of limitations in ORS 12.110(4) begins to run "when a person exercising reasonable care should have discovered the injury, including learning facts that an inquiry would have disclosed"). But, in applying statutes of limitations, courts frequently consider mental illness or intellectual capacity as part of a statutory or common-law tolling rule that is separate from the discovery rule's reasonableness inquiry. See, e.g. , ORS 12.160(3) (considering whether a "person has a disabling mental condition" at the time a cause of action accrues). **499 Nevertheless, the reasons for not considering an actor's mental illness or intellectual capacity in one context may not be applicable here. The parties have not sufficiently addressed that issue. So we do not resolve the question whether a petitioner's mental illness and intellectual disability could ever justify applying the escape clause.[2]
We do not need to resolve that question in this case, because, even if a petitioner's mental illness and intellectual disability could justify applying the escape clause, petitioner's specific allegations here would not justify applying the escape clause in this case. As we held in Bartz , the legislature intended that the escape clause should be "construed narrowly" and applied only in "extraordinary circumstances." 314 Or. at 358, 359, 839 P.2d 217. Interpreting the escape clause in light of that intention, we conclude that petitioner's allegations are insufficient.
As noted, petitioner included a declaration from a clinical social worker indicating that he has, and has had, schizoaffective disorder and borderline intellectual functioning and that someone with those disabilities would not be able to understand the nature of his conviction or the case law necessary to understand the legal basis for his claim. Nevertheless, petitioner submitted his own declaration clearly indicating that he understood the significance of knowing the immigration consequences of his conviction. In that declaration, petitioner stated that, had he known that his guilty plea would lead to his legally required deportation from the United States, then he would not have pleaded guilty. Instead, if his trial counsel had properly advised him on the immigration consequences that would necessarily follow from his conviction, he "would have elected to go to jury trial and litigate all issues, as [his] life in the United States [was] at stake." As a result, petitioner had a sufficient understanding of his legal interests that, when **500 he was told that his conviction could lead to deportation, it was incumbent on him to determine what the actual immigration consequences of his conviction would be, even if that meant seeking the advice of a lawyer. Doing so would have led petitioner to discover the error that he now alleges was made by his trial counsel.
Additionally, petitioner's allegations about his mental illness fail to establish that he did not have the capacity to file his petition within the statute of limitations. Petitioner does not allege, for example, that his mental illness led to any-let alone, prolonged-periods of psychosis during the limitations period. Instead, the pleadings and record show that petitioner has had three psychotic breaks in his life: two before his conviction and one after the limitations period expired. Simply having schizoaffective disorder is, by itself, insufficient. See United States v. Sosa , 364 F.3d 507, 513 (4th Cir 2004) (holding that schizoaffective disorder does not constitute "profound mental incapacity" needed to satisfy one element of equitable tolling for federal habeas claim); Grant v. McDonnell Douglas Corp. , 163 F.3d 1136, 1138 (9th Cir 1998) (holding that equitable tolling based on mental condition may be appropriate "only in exceptional circumstances, such as institutionalization or adjudged mental incompetence").
*752 In sum, although we do not resolve whether a petitioner's mental illness and intellectual disability could ever justify applying the escape clause, we hold that, even if a petitioner's mental illness and intellectual disability could justify applying the escape clause, petitioner's specific allegations here would not justify applying the escape clause in this case. We reach that result based on petitioner's pleadings and the record in this case and based of the legislature's intention that the escape clause should be "construed narrowly" and applied only in "extraordinary circumstances." Bartz , 314 Or. at 358, 59, 839 P.2d 217.
The decision of the Court of Appeals and the judgment of the circuit court are affirmed.
Garrett, J., concurred and filed an opinion.

Petitioner also argued that, because he was not advised of the immigration consequences of his plea, the plea was not knowing and voluntary. We do not address that issue, because petitioner did not renew that argument on appeal or on review to this court.

This case does not require us to consider whether a petitioner's mental illness and intellectual capacity may be relevant considerations when determining whether to apply the escape clause to the bar on successive petitions. ORS 138.550(3). In Gutale , however, we explained that the petitioner is the focus of the reasonableness inquiry for the escape clause to the statute of limitations, while the attorney representing the petitioner must additionally be considered as part of the reasonableness inquiry for the escape clause to the bar on successive petitions. Gutale , 364 Or. at 523-525, 435 P.3d 728.